IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

INTERNATIONAL PAINTERS AND       *
ALLIED TRADES INDUSTRY PENSION      *
FUND, et al.                                            *
                                                     *
        Plaintiffs,                               *
                                                *     Case No. ELH-18-3395
                v.                                     *
                                                  *
K & K. PAINTING, INC.                    *
                                                  *
        Defendant.                            *
                                                  *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## REPORT AND RECOMMENDATIONS

This Report and Recommendations addresses the Motion for Default Judgment filed by Plaintiffs, International Painters and Allied Trades Industry Pension Fund ("Fund" or "Pension Fund"), Tim D. Maitland ("Maitland"), Finishing Trades Institute ("FTI"), Political Action Together Fund ("PAT Fund"), and Painters and Allied Trades Labor Management Cooperation Initiative ("LMCI") (collectively, "Plaintiffs" or "Funds") against Defendant K&K Painting, Inc. ("Defendant"), ECF 11. Defendant did not file an opposition, and the deadline to do so has now passed. *See* Loc. R. 105.2.a (D. Md. 2018). On August 27, 2019, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302, Judge Hollander referred this case to me to review Plaintiffs' motion and to make recommendations concerning damages. ECF 12. I have reviewed Plaintiffs' motion and accompanying attachments. No hearing is necessary. *See* Loc. R. 105.6. For the reasons discussed below, I respectfully recommend that Plaintiffs' Motion for Default Judgment be GRANTED, and that damages be awarded as set forth herein.

I.  **BACKGROUND**

On November 2, 2018, Plaintiffs filed a Complaint in this Court alleging that Defendant failed to make contributions required under the Employee Retirement Income Security Act of 1974 ("ERISA") and governing contracts. Specifically, Plaintiffs allege that Defendant employed members of local labor unions or district councils affiliated with the International Union of Painters and Allied Trades ("the Union") and agreed to abide by a Collective Bargaining Agreement ("CBA"). Compl. ¶ 17. The CBA, along with the Agreement and Declaration of Trust of the Fund ("Trust Agreement"), established and maintained the Pension Fund. *Id*. ¶¶ 17-18. The Pension Fund and Maitland are authorized collection fiduciaries and agents for the International Painters and Allied Trades Industry Pension Plan and the International Painters and Allied Trades Industry Annuity Plan, each of which is a "multiemployer plan," "employee benefit plan," and "employee benefit pension plan" as defined by ERISA. *Id*. ¶¶ 5-8. The Pension Fund and Maitland are also authorized collection fiduciaries and agents for the LMCI, an entity that performs certain employer association functions, and for the FTI and PAT Fund. *Id*. ¶¶ 7, 10, 12.

As a corporate employer utilizing Union employees, Defendant agreed to abide by the terms of the CBA and the Trust Agreement. *Id*. ¶¶ 17-18. Those obligations included (1) making full and timely payment on a monthly basis to the Funds as required by the CBA, Trust Agreement, and plan documents; (2) filing monthly remittance reports with the Pension Fund detailing all the employees or work for which contributions were required under the CBA; (3) producing books and records for an audit upon the Funds' request; and (4) paying liquidated damages, interest, audit costs, and litigation costs, including attorneys' fees, the Funds expended

in collecting amounts due as a result of Defendant's failure to comply with its contractual and statutory obligations. *Id.* ¶ 19.

On February 9, 2018, the Funds completed an audit of Defendant's books and records from January 1, 2015, through October 31, 2017. *Id.* ¶¶ 22-23. On November 2, 2019, Plaintiffs filed a Complaint alleging that Defendant failed to pay amounts due under the CBA in at least the sum of $257,690.36. *Id.* ¶ 20. The Complaint requests the sum certain amount

> plus any additional amounts which may become due during the pendency of this lawsuit, together with interest, at the rate(s) prescribed by 26 U.S.C. § 6621 from the due date for payment until the date of actual payment, liquidated damages equal to the greater of the interest on the unpaid contributions or liquidated damages provided by the documents governing the ERISA Funds or statute, the cost of any audit and reasonable attorneys' fees and costs incurred in this action or the collection or enforcement of any judgment all as provided under the Trust Agreements, plan documents of the ERISA Funds, and 29 U.S.C. § 1132(g)(2).

*Id.* ¶ 22(1). The Complaint also seeks damages under ERISA

> for the contributions found due and owing by the audit, together with interest at the rate(s) prescribed by 26 U.S.C. § 6621 from the due date for payment until the date of actual payment, liquidated damages equal to the greater of the interest on the unpaid contributions or liquidated damages provided by the plan document(s) or statute(s), the cost of the audit, and reasonable attorneys' fees and costs incurred in this action and in connection with any proceedings to enforce or collect any judgment all as provided under the Trust Agreements, Plan and 29 U.S.C. § 1132(g)(2).

*Id.* ¶ 29(1). The Complaint further requests injunctive relief. *Id.* ¶¶ 26-29.

Defendant was served with the summons and Complaint on November 29, 2018. ECF 5. After Defendant failed to file an Answer or otherwise defend, Plaintiffs filed a Motion for Entry of Default, ECF 6, on January 22, 2019, which the clerk granted on January 23, 2019, ECF 7. Plaintiffs thereafter filed a Motion for Judgment by Default, ECF 11, on May 1, 2019, seeking a total award of $271,830.66. In support of their motion, Plaintiffs attached the Affidavit of Michael O'Malley, the Delinquency Manager of the Pension Fund, ECF 11-5, and the Affidavit

3

of Counsel, James E. Goodley, Esq., ECF 11-10. Mr. O'Malley's affidavit alleged that, as of February 9, 2018, Defendant owed the Pension Fund $180,408.69 in contributions, $17,298.09 in interest, $36,081.73 in liquidated damages, and $3,516.65 in audit costs; owed LMCI $7,511.04 in contributions, $832.00 in interest, $1,502.71 in liquidated damages, and $29.44 in audit costs; owed FTI $7,974.15 in contributions, $868.09 in interest, $1,595.33 in liquidated damages, and $29.44 in audit costs; and owed the PAT Fund $3,987.17 in contributions, $434.06 in interest, $796.43 in liquidated damages, and $14.72 in audit costs. Pl. Mot., Ex. 1, ¶ 8. Mr. Goodley's affidavit supported a request for attorneys' fees and costs in the amount of $8,920.92. ECF 11-10.

## II. STANDARD FOR DEFAULT JUDGMENT

In reviewing Plaintiffs' Motion for Judgment by Default, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). It, however, remains for the Court to determine whether these unchallenged factual allegations constitute a legitimate cause of action. *Id.* at 780-81; *see also* 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

If the Court determines that liability is established, it must then determine the appropriate amount of damages. *Ryan*, 253 F.3d at 780-81. The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). In so doing, the Court may conduct an evidentiary hearing. Fed. R. Civ. P. 55(b)(2). The

4

court may also make a determination of damages without a hearing so long as there is an adequate evidentiary basis in the record for an award. *See Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) ("The court need not make this determination [of damages] through a hearing, however. Rather, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum."); *see also Trs. of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation, Inc.*, Civil No. ELH-11-832, 2011 WL 5151067, at *4 (D. Md. Oct. 27, 2011) (determining that, in a case of default judgment against an employer, "the Court may award damages without a hearing if the record supports the damages requested"); *Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, Civ. No. 6:09cv00004, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (concluding that there was "no need to convene a formal evidentiary hearing on the issue of damages" after default judgment where plaintiff submitted affidavits and electronic records establishing the amount of damages sought); *JTH Tax, Inc. v. Smith*, Civil No. 2:06CV76, 2006 WL 1982762, at *3 (E.D. Va. June 23, 2006) ("If the defendant does not contest the amount pleaded in the complaint and the claim is for a sum that is certain or easily computable, the judgment can be entered for that amount without further hearing.").

In sum, the court must (1) determine whether the unchallenged facts in Plaintiffs' Complaint constitute a legitimate cause of action, and, if they do, (2) make an independent determination regarding the appropriate amount of damages and the appropriate injunctive relief.

## III. DISCUSSION

### a. Defendant's Liability under ERISA and Contract Claims

Plaintiffs allege that Defendant's failure to make its required contributions constitutes a breach of its contractual obligations, and therefore also constitutes a violation of section 515 of ERISA and section 185 of the Labor Management Relations Act ("LMRA"). This Court agrees.

Section 515 of ERISA provides in relevant part: "Every employer who is obligated to make contributions to a multiemployer plan . . . under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with . . . such agreement." 29 U.S.C. § 1145 (2012). As the Fourth Circuit has noted, "section 515 puts multiemployer plans in a stronger position than they otherwise occupy under common law contract principles." *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997) (citations omitted). Specifically, an employer is prohibited from asserting certain defenses against a multiemployer fund that the employer might be able to assert against the union itself. *See, e.g.*, *Agathos v. Starlite Motel*, 977 F.2d 1500, 1505 (3d Cir. 1992) (holding that defense of fraud in the execution cannot be applied to pension funds); *Central States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.,* 870 F.2d 1148, 1153 (7th Cir. 1989) (noting that oral agreement to modify the text of a CBA cannot be enforced against pension plans). ERISA allows the recovery of damages in an action to enforce the payment of unpaid contributions. 29 U.S.C. § 1132(g)(2).

The LMRA provides for federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). Employee benefit fund trustees have standing to sue under section 185(a) as third-party beneficiaries of a CBA. *See, e.g.*, *Hudson Cnty. Carpenters Local Union No. 6 v. V.S.R. Constr. Corp.*, 127 F. Supp. 2d 565, 568 (D.N.J. 2000); *Bd. of Trs. of Chi. Plastering Inst. Pension Trust Fund v. William A. Duguid Co.*, 761 F. Supp. 1345, 1347 n.2 (N.D. Ill. 1991).

As described above, Plaintiffs' Complaint alleges that Defendant was party to a CBA that required contributions to be made to the Funds, and further alleges that Defendant failed to make

6

the required contributions. Plaintiffs' Complaint also asserts their standing as third-party beneficiaries of the CBA. Those allegations establish Defendant's liability to Plaintiffs under both ERISA and the LMRA. *See Hudson Cnty. Carpenters,* 127 F. Supp. 2d at 568 ("It is well-established that the failure to make contributions to a union trust fund as required by a collective bargaining agreement constitutes a violation of ERISA § 515 and a violation of LMRA § 301.")

On that basis, I recommend that Plaintiffs' Motion for Judgment by Default be granted.

**b. Damages**

Under section 502(g)(2) of ERISA, an employer who fails to make contributions required by section 515 is liable to the multiemployer fund for the unpaid contributions, interest on the unpaid contributions, liquidated damages of up to twenty (20) percent of the amount of the unpaid contributions, and reasonable attorneys' fees and costs. 29 U.S.C. § 1132(g)(2). Moreover, the CBA requires that signatories abide by the International Painters and Allied Trades Industry Pension Plan ("the Plan"). Collectively, the CBA and the Plan provide the same remedies for breach that would be allowed under the ERISA statute. *See* Pl. Mot., Ex. 1, ¶ 8(c); Ex. 2, art. XXI, § 2, ¶ 4.

**(1) Unpaid Contributions**

According to Mr. O'Malley's affidavit, Defendant currently owes $199,881.05 in contributions for the period between January, 2015 through May, 2018. Pl. Mot., Ex. 1, ¶ 8(a). As a result, I recommend a total award of unpaid contributions in the amount of $199,881.05 as requested in the Motion for Judgment by Default.

**(2) Interest**

According to Mr. O'Malley's affidavit, interest has been calculated in accordance with the terms of the Plan. *Id*. ¶ 8(b). Plaintiffs calculate the interest owed at $19,432.24. *Id.* That

figure diverges slightly from the amount claimed in the Complaint, but the divergence is explained by the additional accrual of interest between the filing of the Complaint and the filing of the Motion for Judgment by Default. The interest appears to have been appropriately calculated, and I recommend that it be awarded as requested.

### (3) Liquidated Damages

The statute and the CBA allow up to twenty (20) percent of the amount of the unpaid contributions to be charged as liquidated damages, which would amount to $39,976.20. *Id*. ¶ 8(c). I therefore recommend that that amount be awarded as liquidated damages.

### (4) Audit Costs

The Trust Agreement provides for recovery of audit costs if an audit reveals that Defendant is in violation of the rules and regulations of the Plan. Pl. Mot., Ex. 6. Because the Pension Fund's February 9, 2019, audit of Defendant's payroll records revealed a consistent pattern of underpayments and non-payments of contributions to the Fund, I recommend that the cost of the audit, $3,590.25, be awarded to Plaintiffs. *See* Pl. Mot., Ex. 1, ¶ 8(d).

### (5) Attorneys' Fees and Costs

Plaintiffs claim a total of $633.42 in costs for items such as postage charges, photocopies, filing fees, and service fees. Pl. Mot., Ex. 7. Those are reasonable charges for out-of-pocket expenses incurred by attorneys in the representation of their clients, and I recommend they be awarded.

In calculating the appropriate award of attorneys' fees, the Court must first determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008); *see Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (stating that "[i]n addition to the attorney's own affidavits, the

fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award") (citations and internal quotation marks omitted). A trial court may exercise its discretion in determining the lodestar amount because it possesses "superior understanding of the litigation," and the matter is "essentially" factual. *Thompson v. HUD*, No. MJG-95-309, 2002 WL 31777631, at *6 n.18 (D. Md. Nov. 21, 2002) (quoting *Daly v. Hill*, 790 F.2d 1071, 1078-79 (4th Cir. 1986)). Once the lodestar amount has been determined, the Court determines a reasonable fee by assessing whether the hours worked were reasonable or whether the request includes hours that were unnecessary or duplicative. In evaluating both the lodestar calculations and the overall reasonable fee, this Court uses "the twelve well-known factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978)." *Thompson*, 2002 WL 31777631, at *6 (footnotes omitted). Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at *6 n.19 (quoting *Johnson*, 488 F.2d at 717-19).

Plaintiffs' attorneys in this case billed an equal hourly rate of $375.00 for each of the attorneys who worked on the matter, and $120.00 per hour for their paralegals. Pl. Mot., Ex. 6, ¶ 4. The rate for the attorneys, and the rate for the paralegals comport with the "Guidelines for hourly rates" set forth in Appendix B of the Local Rules of this Court. However, Mr. Gelman billed 1.8 hours for "Review and Revision of Motion for Default Judgment" on April 16, 2019,

9

eight days prior to the "Preparation of Motion for Default" billed on April 24, 2019. *Id.* Ex. 7. Therefore, I recommend reducing the requested award by the amount of the April 16, 2019, billing entry, $675.00. The total amount of legal fees, with that adjustment, equals $7,642.50, plus $633.42 in costs, for a total of $8,275.92. This total appears to be within the range of fees and costs awarded in similar cases in this district. *See, e.g.*, *Int'l Painters & Allied Trades Indus. Pension Fund v. H.C. Ackerman & Son, Inc.*, Civil No. JKB-11-2117, 2012 WL 251963 (D. Md. Jan. 24, 2012) (awarding $6,928.26 in fees and costs); *Plumbers & Steamfitters Local 486 Pension Fund v. RLS Heating, Air Conditioning, & Refrigeration, LLC*, Civil No. WDQ-10-2716, 2010 WL 5391450 (D. Md. Dec. 22, 2010) (recommending an award of $5,845.75 in fees and costs). For those reasons, I recommend an award of fees and costs in the total amount of $8,275.92.

### c. Injunctive Relief under the CBA

Plaintiffs also seek certain injunctive relief allowed by the terms of the CBA. Specifically, the CBA requires Defendant to submit monthly remittance reports and to produce all of its payroll books and financial records to allow a contribution compliance audit. Pl. Mot., Ex. 2, art. XXI, § 2. Injunctive relief requiring compliance with those terms is appropriate because Defendant has already agreed to those contractual obligations, and because this Court has authority to order an audit under ERISA. 29 U.S.C. §§ 1132(a)(3), 1132(g)(2)(E). I therefore recommend that the requested injunctive relief be granted.

## IV. CONCLUSION

For the reasons set forth above, I recommend that:

1. The Court GRANT Plaintiffs' Motion for Judgment by Default, ECF 11; and

2. The Court award Plaintiffs, against Defendant, a total judgment of $271,155.66, along with the other relief requested in Plaintiffs' proposed "Judgment by Default."

I also direct the Clerk to mail a copy of this Report and Recommendations to Defendant at the address listed on Plaintiffs' Complaint, ECF 1.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5.b. I suggest that, if Plaintiffs do not file objections, they should provide a revised proposed Default Judgment order to Judge Hollander for signature, in the event she concurs with this Report and Recommendations.

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report. Such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated: September 11, 2019  /s/
Stephanie A. Gallagher
United States Magistrate Judge